# IN THE UNITED STATES DISTRICT COURT FOR THE
# WESTERN DISTRICT OF OKLAHOMA

BOATRIGHT FAMILY, LLC, an Oklahoma )
limited liability company, )
)
Plaintiff, )
)
vs. ) NO. CIV-13-192-D
)
RESERVATION CENTER, INC., a )
California corporation; CCRA )
INTERNATIONAL, INC., a Delaware )
corporation; OURLINK, LLC, a Texas )
limited liability company; and JOHN DOES )
1 THROUGH 21, )
)
Defendants. )

## ORDER

Before the Court is the motion [Doc. No.7] of Defendants Reservation Center, Inc. ("RCI"), CCRA International, Inc. ("CCRA"), and Ourlink, LLC ("Ourlink") to dismiss this action for lack of personal jurisdiction, pursuant to Fed. R. Civ. P. 12(b)(2). The movants argue that they do not have sufficient contacts with Oklahoma to permit the Court to exercise jurisdiction over them. Plaintiff Boatright Family, LLC ("Boatright") timely responded to the motion, and the movants filed a reply.

I. Background:

Boatright initially filed this action in the District Court of Oklahoma County, and Defendants removed it to this Court, asserting federal subject matter jurisdiction on the basis of diversity of citizenship. Boatright alleges that, on March 1, 2011[1], it obtained a judgment on its counterclaim against RCI in an action brought by RCI and Ourlink in the District Court of Oklahoma County,

---

[1]Although the petition states the judgment was entered on March 1, 2012, this is apparently a typographical error because the judgment, submitted as Exhibit 2 to Boatright's response brief, is file-stamped March 1, 2011.

Case No. CJ-2007-3876, against Boatright and others. Boatright was awarded judgment against RCI for amounts due on a promissory note in the principal amount of $500,000.00 ("Oklahoma Judgment"). *See* Oklahoma Judgment, Ex. 2 to Boatright response brief. Boatright alleges that RCI has fraudulently transferred its assets and property to CCRA, Ourlink and/or one or more of the John Doe defendants. Boatright alleges that RCI did so with the intent of preventing Boatright from collecting the Oklahoma Judgment. Boatright also argues, and the movants do not dispute, that RCI, CCRA and Ourlink are affiliated companies, as all are owned and controlled by the same individuals.

It is undisputed that Boatright is an Oklahoma limited liability company, RCI is a California corporation, CCRA is incorporated in Delaware, and Ourlink is a Texas corporation. The parties also agree that RCI, CCRA, and Ourlink currently have their principal places of business in Texas.[2] It is also not disputed that, in 2007, RCI and Ourlink filed a lawsuit in the District Court of Oklahoma County against Boatright and others, asserting claims based on alleged tortious conduct in connection with several loan agreements and security agreements including, *inter alia*, a promissory note and related agreements evidencing a $500,000.00 loan to RCI from Boatright. Boatright then asserted a counterclaim against RCI on the promissory note. RCI did not dispute that it owed an outstanding obligation on the promissory note, but claimed an offset. According to the Judgment entered by the Oklahoma County District Court, "[a]t trial, the parties agreed that RCI owes on the Promissory Note the sum of $500,000, subject only to the claimed offset for partial failure of consideration." Oklahoma Judgment, Response Ex. 2, p. 4. RCI's claim of an offset was

---

[2]Prior to the transfers of interest described herein, *infra,* RCI previously had its principal place of business in California. However, the Notice of Removal filed in this action reflects the principal places of business of RCI, CCRA, and Ourlink are now located in Texas. Notice of Removal [Doc. No. 1] at ¶¶ 5-7.

submitted to the jury, and a verdict was returned in favor of Boatright and against RCI, thus resulting in the $500,000.00 Oklahoma Judgment against RCI. *Id.* at p. 5.

Boatright began efforts to collect the judgment, including domesticating the judgment in the District Court of Tarrant County, Texas. Boatright conducted discovery in that proceeding, including written interrogatories and depositions. *See* Boatright response Exs. 3, 4, and 6. According to Boatright, discovery revealed that RCI had transferred, or was in the process of transferring, all of its assets to other entities or individuals. Boatright now contends in this lawsuit that such conduct constitutes a fraudulent and intentional effort to prevent Boatright from collecting the Oklahoma Judgment. RCI, CCRA, and Ourlink seek dismissal, arguing that this Court cannot exercise personal jurisdiction over them.

## II. Standards governing Rule 12(b)(2) motions:

When considering a Rule 12(b)(2) motion, a court has discretion to conduct an evidentiary hearing or adjudicate the motion on the basis of briefs and evidentiary materials. *Dudnikov v. Chalk & Vermilion Fine Arts, Inc.*, 514 F.3d 1063, 1069 (10th Cir. 2008). In this case, the parties have submitted evidentiary material and legal argument sufficient to allow the Court to rule on the motion without the necessity of a hearing.

It is well established that, to be subject to personal jurisdiction, a nonresident defendant must have sufficient contacts with the forum state to satisfy the requirements of due process. *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 291 (1980). "To obtain personal jurisdiction over a nonresident defendant in a diversity action, a plaintiff must show both that jurisdiction is proper under the laws of the forum state and that the exercise of jurisdiction would not offend due process." *Intercon, Inc. v. Bell Atlantic Internet Solutions, Inc.*, 205 F.3d 1244, 1247 (10th Cir. 2000). In Oklahoma that test becomes a single inquiry because Oklahoma's long-arm statute reaches to the

full extent of due process. *Rambo v. American Southern Ins. Co.*, 839 F. 2d 1415, 1416 (10th Cir. 1988).

The minimum contacts required to satisfy due process and confer personal jurisdiction may be established through a showing of general or specific jurisdiction. *Fireman's Fund Ins. Co. v. Thyssen Mining Construction of Canada, Ltd.,* 703 F.3d 488, 493 (10th Cir. 2012); *Benton v. Cameco Corp.*, 375 F.3d 1070, 1075 (10th Cir. 2004). Specific jurisdiction[3] exists where a defendant does not have continuous contacts with the forum state, but the plaintiff shows that 1) the defendant has purposefully directed its activities at residents of the forum state, and 2) the plaintiff's alleged injuries "arise out of or relate to" those activities. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 473 (1998).

Specific jurisdiction requires that the defendant's contacts with the forum reflect that "'the defendant purposefully avail[ed] itself of the privilege of conducting activities within the forum State.'" *Fireman's Fund*, 703 F.3d at 493 (quoting *Asahi Metal Indus. Co., Ltd. v. Superior Court of California,* 480 U.S. 102, 113 (1987)). "The contacts with the forum must make being sued there foreseeable so that the defendant could 'reasonably anticipate'" being subjected to litigation there. *Id.* (quoting *World–Wide Volkswagen*, 444 U.S. at 297). If such contacts are established, the Court must then determine whether the exercise of jurisdiction would "offend traditional notions of fair play and substantial justice." *Dudnikov*, 514 F.3d at 1080.

"The plaintiff has the burden of establishing jurisdiction when the defendant contests the court's jurisdictional authority." *Cudd Pressure Control, Inc. v. Cornelius,* 1996 WL 122018, at *2

---

[3]Boatright does not contend that RCI, CCRI, and Ourlink have the "continuous and systematic" general business contacts with Oklahoma required to establish general personal jurisdiction. *See Fireman's Fund,* 703 F.3d at 493. Accordingly, the Court need not discuss the standards governing general personal jurisdiction.

4

(10th Cir. Mar. 20, 1996) (unpublished) (citing *Wenz v. Memery Crystal*, 55 F.3d 1503, 1505 (10th Cir.1995)). Where the Court does not hold an evidentiary hearing, the plaintiff must only make a *prima facie* showing of personal jurisdiction by demonstrating, via affidavit or other written materials, facts that, if true, would support jurisdiction over the defendant. *AST Sports Science, Inc. v. CLF Distribution Ltd.*, 514 F.3d 1054, 1057 (10th Cir. 2008); *Melea, Ltd. v. Jawer SA*, 511 F.3d 1060, 1065 (10th Cir. 2007). In assessing the sufficiency of the plaintiff's showing, the Court must assume the truth of its allegations if they are "plausible, non-conclusory, and non-speculative." *Dudnikov,* 514 F.3d at 1070. Disputed factual contentions must be resolved in the plaintiff's favor. *Id.*

III. Application:

RCI, CCRA, and Ourlink argue that Boatright cannot establish the requirements of specific personal jurisdiction because the conduct underlying Boatright's allegations did not occur in Oklahoma. They admit that, subsequent to the entry of Boatright's Oklahoma Judgment against RCI, certain transfers of ownership occurred between RCI, CCRA, and Ourlink. However, they argue that these transfers did not occur in Oklahoma, the conduct was confined to Texas, and the transfers were not directed at Boatright in Oklahoma. They contend that Boatright cannot show that they purposefully availed themselves of the privilege of doing business here on the basis of these actions.

In response, Boatright argues that the movants' conduct was directed at Boatright because it was allegedly designed to prevent Boatright from collecting the Oklahoma Judgment. Boatright further argues that the Oklahoma Judgment resulted from the lawsuit filed by Ourlink and RCI in Oklahoma to assert claims based on prior business agreements with Boatright and others, and Ourlink and RCI sought to enforce rights in Oklahoma courts under Oklahoma law.

According to the evidence submitted by Boatright, when Ourlink and RCI filed the Oklahoma lawsuit, Ourlink was owned by the individuals who are named herein as the John Doe defendants. At that time, Ourlink also owned all of the stock of RCI, and RCI owned all of the stock of CCRA. Response Ex. 3. Subsequent to the entry of the Oklahoma Judgment, RCI transferred all of the existing stock of CCRA to Ourlink, and Ourlink transferred its RCI stock to CCRA. Response Ex. 4. According to Boatright, as a result of these transfers, the John Doe defendants currently own all of the stock of CCRA, and CCRA owns all of RCI's stock. Thus, while RCI was originally the parent corporation of CCRA, the transfers resulted in it becoming a subsidiary of CCRA. According to Boatright, RCI is now a "non-operating entity," and CCRA operates the business formerly handled by RCI.[4]

RCI, CCRA, and Ourlink do not dispute Boatright's evidence and argument regarding the result of these transfers. They deny that the transfers were intended to prevent Boatright from collecting the Oklahoma judgment against RCI. However, whether Boatright can prove that contention is not the issue now before the Court. Instead, the only question raised by the motion to dismiss is whether the conduct of RCI, CCRA, and Ourlink evidences sufficient contacts with Oklahoma to allow this Court to exercise personal jurisdiction over them.

Boatright argues in part the Court may properly exercise jurisdiction over RCI, CCRA, and Ourlink because RCI and Ourlink availed themselves of the benefits of the Oklahoma courts when they filed the lawsuit which resulted in the Oklahoma Judgment. Although Boatright does not cite legal authority for this contention, the Court has determined several courts have held that, where a

---

[4] According to information included on CCRA's web site and submitted as Response Ex. 5, the business operated by CCRA, and formerly by RCI, consists of a "call center" for travel agents and a hotel catalogue which provide information to member travel agents and hotels, including online booking of hotel reservations and related matters.

party files a lawsuit in the forum state, it is subject to that state's personal jurisdiction in a subsequent suit involving a related transaction.

"Courts have found personal jurisdiction where a non-resident party has previously filed litigation in the forum state involving the same transaction at issue." *George Mason University Foundation, Inc. v. Morris*, 2012 WL 1222589, at *5 (E.D. Va. April 11, 2012) (unpublished) (citing *General Contracting & Trade Co. v. Interpole, Inc.*, 940 F.2d 20 (1st Cir.1991) (party which elects to avail itself of the benefits of a state court's jurisdiction surrenders any objections to claims arising out of the same nucleus of operative facts in a subsequent action in the state); *Thompson v. Thompson*, 798 F.2d 1547, 1549 (9th Cir.1986), *aff'd*, 484 U.S. 174 (1988) (defendant "purposefully availed herself of the privilege of conducting her activities in California when she invoked the benefits and protections afforded by California law by initiating an action"); and *Threlkeld v. Tucker*, 496 F.2d 1101 (9th Cir.1974) (husband's prior use of California courts against his ex-wife subjected him to long-arm jurisdiction in California in a suit filed by wife fourteen months later).

The Tenth Circuit Court of Appeals is in agreement. "It is well established that the act of filing a lawsuit in a particular state is sufficient to establish jurisdiction over the plaintiff in the courts of that state in a subsequent action for abuse of process or similar torts." *Rusakiewicz v. Lowe*, 556 F.3d 1095, 1101 (10th Cir. 2009) (citing *Neuralstem, Inc. v. StemCells, Inc.,* 573 F.Supp. 2d 888, 897-98 (D.Md. 2008), (collecting cases in which a party "essentially consents" to jurisdiction in the forum state through the "act of filing a previous suit where the second suit arises from the 'same transaction' "). Furthermore, the Tenth Circuit has held that this rule also extends to individuals or entities who, although not parties to the original lawsuit, had a close connection to the plaintiff or were involved in the decision to pursue that lawsuit. *Rusakiewicz*, 556 F.3d at 1101; *Cricket*

*Communications, Inc. v. Pace,* 2012 WL 1119414, at *3 (D. Utah April 3, 2012) (unpublished) (citing *Rusakiewicz,* 556 F. 3d at 1101).

In this case, Ourlink and RCI filed suit in the District Court of Oklahoma County to assert claims related to their business transactions with Boatright and others, and that lawsuit resulted in the Oklahoma Judgment which forms the underlying basis for Boatright's claims against them in this case. The only argument asserted by RCI, Ourlink and CCRA in this regard is their statement that RCI and Ourlink filed the 2007 lawsuit in Oklahoma only because the parties' contractual agreement "at the heart of that matter" included a provision that the Oklahoma courts would have jurisdiction of litigation involving the agreement. Reply brief at page 2. The movants state that, but for the wrongful conduct of Boatright and others, no lawsuit would have been necessary. Thus, they suggest that submitting their dispute to the Oklahoma court should not constitute purposeful availment.

RCI, Ourlink and CCRA do not submit legal authority to support the contention that purposeful availment cannot be based on their prior Oklahoma lawsuit litigating claims based on Oklahoma law and arising from their business agreements with Boatright. Nor does their argument alter the fact that RCI admittedly was in default on its loan obligation to Boatright, an Oklahoma limited liability company, or that it sought an offset to that obligation under Oklahoma law, and that it did so in an Oklahoma court.

Even if the Court accepted the movants' argument, however, it finds evidence is sufficient to show that the movants purposely availed themselves of the privilege of doing business in Oklahoma through their business relationship with Boatright, and the claims asserted in this action stem from that relationship. RCI, Ourlink and CCRA argue that the transfers of ownership were not directed at Oklahoma because they were negotiated and consummated in Texas. The Court finds

this argument unpersuasive because the Court's jurisdictional analysis requires an examination of not only the movants' conduct following the Oklahoma Judgment, but their previous course of dealing with Boatright. "The court must examine the parties' 'prior negotiations and contemplated future consequences, along with the terms of the contract and the parties' actual course of dealing.'" *Marcus Food Co. v. DiPanfilo*, 671 F.3d 1159, 1166-67 (10th Cir. 2011)(quoting *TH Agriculture & Nutrition, LLC v. Ace European Group Ltd.*, 488 F.3d 1282, 1288 (10th Cir. 2007) (internal quotation marks omitted)).

Based on the evidence before the Court, the relationship between Boatright and RCI began as a business transaction involving a series of agreements, including Boatright's loan to RCI, and the promissory note and related agreements which led to the Oklahoma Judgment. "Although agreements alone are likely to be insufficient to establish minimum contacts, 'parties who reach out beyond one state and create continuing relationships and obligations with citizens of another state are subject to regulation and sanctions in the other state for the consequences of their activities.'" *Marcus Food*, 671 F.3d at 1166 (quoting *TH Agriculture*, 488 F. 3d at 1287-88 (internal citation omitted)). The evidence of the parties' actual course of dealing in this case establishes contacts with Oklahoma sufficient to authorize the Court's exercise of personal jurisdiction over RCI.

The record reflects RCI entered into a business transaction with Boatright, an Oklahoma limited liability company, whereby RCI received a loan from Boatright. The undisputed evidence also shows that RCI admittedly defaulted on the loan, although it unsuccessfully argued that there was a partial failure of consideration. Oklahoma Judgment, Response Ex. 2. According to the evidence, RCI benefitted from its business relationship with Boatright and, as a result of the Oklahoma Judgment, is obligated to pay the full amount owed to Boatright on the promissory note. By their admitted common ownership with RCI, CCRA and Ourlink also engaged in business

transactions in Oklahoma and, as a result of the 2007 lawsuit, RCI and Ourlink obtained partial relief from Boatright and the other defendants in that lawsuit. *Id.*

As a result of the loan transaction with Boatright, whereby RCI affirmatively states it agreed to submit to the jurisdiction of Oklahoma courts and be governed by Oklahoma law, RCI cannot now contend that it was not reasonably foreseeable that litigation in Oklahoma could result from its business transaction. Although "foreseeability alone" is not sufficient to support personal jurisdiction, "[f]oreseeability that an event may occur over which a defendant has no control is distinct from foreseeability of litigation based on the defendant's own actions." *TH Agriculture*, 488 F.3d at 1290 (citing *World-Wide Volkswagen*, 444 U.S. at 297). The evidence supports the conclusion that Oklahoma litigation based on its actions was foreseeable to RCI.

According to the evidence of record and the governing law, the Court concludes that RCI has sufficient contacts with Oklahoma to permit the Court to exercise of personal jurisdiction over it. Furthermore, the undisputed evidence establishes that the ownership of CCRA is intertwined with that of RCI and Ourlink, and, as a result of the transfers of ownership which occurred prior to the filing of this lawsuit, the three movants are sufficiently intertwined to also permit exercise of personal jurisdiction over Ourlink and CCRA.

Having so concluded, the Court must determine whether the exercise of personal jurisdiction would offend "traditional notions of fair play and substantial justice." *TH Agriculture,* 488 F.3d at 1292 (citing *Asahi*, 480 U.S. at 113). To do so, the Court weighs five factors: 1) the burden on the defendant, 2) the forum state's interest in resolving the dispute, 3) the plaintiff's interest in receiving convenient and effective relief, 4) the interstate judicial systems' interest in obtaining the most efficient resolution of controversies, and 5) the shared interest of the several states in furthering fundamental substantive social policies. *Id.* (citing *Intercon*, 205 F.3d at 1249).

10

In arguing that the exercise of personal jurisdiction would be unreasonable, the movants focus only on the initial factor. They contend they would be burdened by litigating here because their principal places of business are in Fort Worth, Texas,[5] and all books and records related to the challenged transfers are located in Fort Worth. However, Fort Worth is not a significant distance from Oklahoma City, and the movants have retained Oklahoma City counsel.

The second factor requires examination of the forum state's interest in the dispute, and that factor favors litigation in Oklahoma. States have "an important interest in providing a forum in which their residents can seek redress for injuries caused by out-of-state actors." *OMI Holdings,* 149 F.3d at 1096. Furthermore, the subject of this lawsuit is a judgment entered by an Oklahoma court based on a loan agreement which, by its terms, is governed by Oklahoma law. "Oklahoma has a substantial interest in having a court within Oklahoma decide issues of Oklahoma law." *CITGO Petroleum Corp. v. Home Service Oil Co.*, 2009 WL 4348391, at *8 (N.D. Okla. Nov. 30, 2009) (unpublished). Similarly, Oklahoma has an interest in enforcing judgments entered by its own courts, and the movants do not argue to the contrary.

The third factor evaluates whether Boatright can receive convenient and effective relief in another forum. The record before the Court suggests that this factor does not weigh heavily in favor of either Boatright or the movants, as it does not appear that Boatright's "chances of recovery will be greatly diminished" if it is forced to litigate elsewhere. *See, e.g., TH Agriculture*, 488 F.3d at 1292.

With respect to the fourth factor, this forum appears to be an efficient location for the litigation. As explained, *supra*, although documents reflecting the allegedly fraudulent transfers are

---

[5]The movants argue that each is located in Fort Worth, Texas. Reply brief [Doc. No. 9] at p. 8.

in Texas, the movants do not argue that litigating here will be inefficient. Thus, this factor does not weigh against litigating the matter in this forum.

The final factor to consider is whether the exercise of jurisdiction here would affect the "substantive social policy interests of other states." *OMI Holdings,* 149 F.3d at 1097. The parties do not address this factor, and the Court finds nothing in the record to suggest that litigating this matter in Oklahoma would impact any other state's social policy.

Having considered the applicable factors, the Court concludes that litigating the action in this forum would not offend traditional notions of fair play and substantial justice. Accordingly, the Court may exercise personal jurisdiction over the defendants.

IV. Conclusion:

For the foregoing reasons, the motion to dismiss [Doc. No. 7] for lack of personal jurisdiction is DENIED. The action will proceed in this Court, and Defendants are directed to file their responses to the plaintiff's pleading in accordance with the deadlines in the Local Civil Rules and the Federal Rules of Civil Procedure.

IT IS SO ORDERED this 11th day of July, 2013.

_____
TIMOTHY D. DeGIUSTI
UNITED STATES DISTRICT JUDGE