IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF OKLAHOMA

BOATRIGHT FAMILY, LLC )
an Oklahoma limited liability company, )
 )
       Plaintiff, )
 )
vs. ) Case No. CIV-13-192-D
 )
RESERVATION CENTER, INC. )
a California Corporation; )
CCRA INTERNATIONAL, INC., )
a Delaware Corporation; )
OURLINK, LLC, a Texas )
limited liability company; )
Don Buchholz; EACR, Ltd.; )
Hope Harvison; John H. Harvison; Mike )
Harvison; Randall Harvison; Perry Johns; )
Jove Investments; Richard Marxen; )
MCRK, Ltd.; Kay Parker; Max Poyner; )
Kenneth Rees; and Michael Stinson; )
 )
       Defendants. )

**ORDER**

Before the Court is defendants Reservation Center, Inc. ("RCI"), CCRA International, Inc. ("CCRA"), and OurLink, LLC's ("OurLink") (collectively "Defendants") Motion for Summary Judgment, filed May 20, 2014. On June 10, 2014, plaintiff Boatright Family, LLC ("Boatright") filed its response. Also before the Court is Boatright's Motion for Summary Judgment, filed June 4, 2014. On September 3, 2014, Defendants filed their amended response, and on September 9, 2014, Boatright filed its reply. Thus, the motions are fully briefed and ready for determination.

I.     Introduction

In April 2005, Onelink Corporation f/k/a One Link 4 Travel, Inc. ("One Link") purchased RCI from the Goldberg family.[1]  To fund the purchase of RCI, on April 29, 2005, One Link obtained a loan from OurLink in the amount of $3.24 million.  The loan was secured by the assets of RCI, and all of the stock of RCI was pledged by One Link as additional collateral for the loan.  On the same date, OurLink made a loan to RCI in the amount of $760,000.  One Link guaranteed the $760,000 loan, and the loan was secured by the assets of RCI.  One Link and RCI were each in default on their respective loans by early 2006.

In November 2005, Boatright loaned the sum on $500,000 to RCI.  The loan was also secured by all accounts and accounts receivable of RCI, including all cash and non-cash proceeds of all such accounts and accounts receivable and the products and increase of all such accounts and accounts receivable.  At that time, OurLink agreed by means of a Subordination Agreement that the lien of Boatright was superior to the lien of OurLink.  RCI was in default on its loan to Boatright by early 2006.

On or around November 19, 2006, OurLink became the sole owner of RCI by virtue of a public foreclosure and sale to OurLink of all of the shares of RCI pursuant to the terms of the April 29, 2005 pledge agreement.  At the foreclosure sale, OurLink purchased the RCI stock for $1,050,000.

On February 13, 2007, OurLink filed suit against One Link in California District Court for the County of San Francisco ("California Litigation").  In the California Litigation, OurLink attempted to collect a deficiency judgment on the $4 million of convertible secured promissory notes

---

[1] After the purchase, RCI was a wholly owned subsidiary of One Link.

(the $3.24 million loan and the $760,000 loan). On April 2, 2007, One Link filed a counterclaim against OurLink in the California Litigation. One Link alleged that OurLink improperly disposed of the collateral because the sale was not conducted in a commercially reasonable manner. The parties settled the California Litigation by agreement dated November 2, 2007. One Link and OurLink released each other regarding the $3.24 million loan in consideration of covenants by One Link to pay money and establishing certain other obligations of One Link. On December 18, 2007, One Link and OurLink each dismissed their claims in the California Litigation with prejudice.

On May 3, 2007, OurLink and RCI filed suit against Boatright and One Link in the District Court of Oklahoma County, State of Oklahoma ("Oklahoma Litigation"). Boatright filed a counterclaim for damages based upon RCI's failure to pay the $500,000 loan. On March 1, 2011, judgment was entered. The Judgment provided, in part:

> It is, therefore, ORDERED, ADJUDGED and DECREED that judgment as a matter of law be entered in favor of Plaintiff, OurLink, LLC, that the lien created by OurLink's April 29, 2005 Security Agreement on the assets of Reservation Center, Inc., is not subordinate to the lien of [Boatright] on RCI's accounts, accounts receivable, and proceeds thereof created by the Security Agreement.
> It is further ORDERED, ADJUDGED and DECREED that judgment in the amount of Five Hundred Thousand Dollars ($500,000) be entered against Reservation Center, Inc., and in favor of Defendant, Boatright Family, LLC, on the Promissory Note, together with the additional amount of $263,120.23 representing interest due on the Promissory Note as of March 31, 2010, and interest subsequent to March 31, 2010, at the rate of 8.0 percentage points above the Prime Rate of the Bank of New York as it may be published and fluctuate from time to time on the $500,000 awarded herein, and for enforcement according to applicable law of the Security Agreement in favor of Boatright Family, LLC as against Reservation Center, Inc., subject only to the ruling above as to Plaintiff, Ourlink, LLC.

March 1, 2011 Judgment in *OurLink, LLC, et al. v. Peter Boatright, et al.*, Case No. CJ-2007-3876 at 5-6.

In July 2009, RCI sold the stock in CCRA to OurLink, RCI's parent, for $1000. Later that same summer, RCI sold all of its non-cash assets to CCRA for CCRA's assumption of RCI's debt to OurLink.[2] On December 31, 2011, CCRA asserts that it paid RCI's debt to OurLink.

Additionally, between February 2008 and December 2012, RCI made numerous transfers of cash to CCRA, OurLink, and Richard Marxen. Defendants allege that these transfers were repayments of loans made by CCRA, OurLink, and Richard Marxen.

On November 13, 2012, Boatright filed the instant action in the District Court of Oklahoma County, State of Oklahoma alleging claims under the Oklahoma Uniform Fraudulent Transfer Act ("OUFTA"). On February 25, 2013, this action was removed to this Court. The parties now move for summary judgment.

II.  Summary Judgment Standard

"Summary judgment is appropriate if the record shows that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. The moving party is entitled to summary judgment where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party. When applying this standard, [the Court] examines the record and reasonable inferences drawn therefrom in the light most favorable to the non-moving party." *19 Solid Waste Dep't Mechs. v. City of Albuquerque*, 156 F.3d 1068, 1071-72 (10th Cir. 1998) (internal citations and quotations omitted).

---

[2] At that time, both RCA and CCRA were wholly-owned subsidiaries of OurLink.

"Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Furthermore, the non-movant has a burden of doing more than simply showing there is some metaphysical doubt as to the material facts. Rather, the relevant inquiry is whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Neustrom v. Union Pac. R.R. Co.*, 156 F.3d 1057, 1066 (10th Cir. 1998) (internal citations and quotations omitted).

III.    Discussion

    A.    Defendants' Motion for Summary Judgment

Defendants move the Court for summary judgment on all of the claims asserted by Boatright. Specifically, Defendants assert that Boatright has not presented sufficient evidence to raise a genuine issue of fact that the transfers referenced in Boatright's Complaint involved property that was an "asset" of RCI as defined by the OUFTA.

In its Complaint, Boatright alleges that the transfer of CCRA stock from RCI to OurLink and the transfer of other property, including customer lists and other intangible assets, from RCI to CCRA, OurLink, and/or others were violations of the OUFTA. Under the OUFTA, a "transfer" is defined as follows:

> every mode, direct or indirect, absolute or conditional, voluntary or involuntary, of disposing of or parting with an assert or an interest in an asset, and includes payment of money, release, lease, and creation of a lien or other encumbrance.

Okla. Stat. tit. 24, § 113(12). Further, the OUFTA defines "asset" as follows:

> "Asset" means property of a debtor, but the term does not include:

5

>       a.   property to the extent it is encumbered by a
>            valid lien; or
>       b.   property to the extent it is generally exempt
>            under nonbankruptcy law; or
>       c.   an interest in property held in tenancy by the entireties
>            to the extent it is not subject to process by a creditor
>            holding a claim against only one tenant.

Okla. Stat. tit. 24, § 113(2).

Defendants contend that the undisputed evidence establishes that, at the time of the transfers complained of, there were very large liens on the properties transferred. Defendants further contend that while the non-cash items transferred had some value, there is no evidence to suggest that those items had a value anywhere near the purportedly undisputed secured debt on those items of over $3,000,000 at the time of the transfers.

Defendants' contention, however, relies, in part, upon a factual allegation which Defendants have conceded is erroneous in their response to Boatright's motion for summary judgment. In their motion for summary judgment, Defendants allege that the properties transferred were encumbered, in large part, by a lien based upon the $3.24 million loan. However, as conceded by Defendants, the debt from the $3.24 million loan was satisfied based upon the foreclosure sale of all of the shares of RCI and the November 2, 2007 settlement of the California Litigation. Thus, the $3.24 million loan could not have been a valid lien against any of the assets of RCI in July 2009, the time of the transfers in question, which undermines a major proposition on which Defendants' summary judgment motion is based. Therefore, the only potential remaining liens against the assets of RCI at the time of the transfers in question would be based upon the $760,000 loan from OurLink and the $500,000 loan from Boatright.

In its response, Boatright contends that the $760,000 loan was satisfied by the 2009 assignment of all the non-cash assets of RCI to CCRA. Specifically, Boatright asserts that since CCRA assumed all the debt from the $760,000 loan in exchange for all the non-cash assets of RCI, the RCI assets that were not transferred to CCRA must be assets in excess of the lien associated with the $760,000 loan. Additionally, Boatright contends that its lien should not be included in the calculation to determine whether the value of the property exceeded any liens. Specifically, Boatright asserts that allowing Defendants to use the Boatright lien as a shield to fraudulently transfer assets from RCI to CCRA and/or OurLink to avoid the same lien would defeat the intent of the OUFTA. Boatright further asserts that because the Boatright lien was valid only against accounts or accounts receivable and because the funds that were transferred were simply cash or funds held in a deposit account, the funds transferred were not subject to the Boatright lien.

Having carefully reviewed the parties' submissions, and viewing the evidence in the light most favorable to Boatright and construing all reasonable inferences in favor of Boatright, the Court finds Defendants are not entitled to summary judgment. Specifically, the Court finds Boatright has presented sufficient evidence to raise a genuine issue of fact as to whether the transfers referenced in Boatright's Complaint involved property that was an "asset" of RCI as defined by the OUFTA. Further, in light of Defendants' concession that the debt from the $3.24 million loan had been satisfied at the time of the transfers at issue, the Court finds there is an issue of fact as to the extent to which the property transferred was encumbered by a valid lien or liens. In any event, on the summary judgment record presented to the Court, Defendants are not entitled to judgment as a matter of law.

Therefore, the Court finds that Defendants' Motion for Summary Judgment should be denied.

B. Boatright's Motion for Summary Judgment

In its motion for summary judgment, Boatright seeks a finding by this Court that certain transfers were fraudulent transfers under the OUFTA and seeks judgment in its favor on those transfers.[3]

The OUFTA provides, in pertinent part:

> A. A transfer made or obligation incurred by a debtor is fraudulent as to a creditor whose claim arose before the transfer was made or the obligation was incurred if the debtor made the transfer or incurred the obligation without receiving a reasonably equivalent value in exchange for the transfer or obligation and the debtor was insolvent at that time or the debtor became insolvent as a result of the transfer or obligation.
>
> B. A transfer made by a debtor is fraudulent as to a creditor whose claim arose before the transfer was made if the transfer was made to an insider for an antecedent debt, the debtor was insolvent at that time, and the insider had reasonable cause to believe that the debtor was insolvent.

Okla. Stat. tit. 24, § 117.

Based upon Defendants' responses to Boatright's Statement of Undisputed Material Facts, it is undisputed that OurLink, CCRA, and Richard Marxen are insiders and that from 2006 onward RCI was insolvent. The main dispute between the parties for purposes of Boatright's motion for summary judgment is whether the transfers involved property that was an "asset" of RCI as defined

---

[3] Specifically, Boatright is seeking judgment as to (1) the transfers from RCI to CCRA in the amount of $522,600 in November of 2009, $450,000 in November 2011, $97,026.21 in January 2012, and $250,000 in December 2012; (2) the transfers from RCI to OurLink in the amount of $25,000 on or about February 28, 2008, $175,000 on or about March 28, 2008, $25,000 on or about April 30, 2008, $25,000 on or about May 28, 2008, $200,000 on or about January 19, 2009, $100,000 on or about February 13, 2009, $100,000 on or about March 13, 2009, $100,000 on or about April 17, 2009, $150,000 on or about May 15, 2009, $150,000 on or about June 24, 2009, and $250,000 on or about December 28, 2012; and (3) the transfers from RCI to Richard Marxen in the amount of $12,500 on or about February 28, 2008, $52,500 on or about March 28, 2008, $15,000 on or about August 13, 2008, and $10,000 on or about September 5, 2008.

8

by the OUFTA. Having carefully reviewed the parties' submissions, and viewing the evidence in the light most favorable to Defendants and construing all reasonable inferences in favor of Defendants, the Court finds Defendants have submitted sufficient evidence to create a genuine issue of fact as to whether the property transferred was an "asset" of RCI as defined by the OUFTA. Specifically, the Court finds there remain factual issues as to whether the settlements with the Goldbergs and Boatright regarding separate matters not relevant to the instant action were applied to the $760,000 loan and if so, when they were applied. Additionally, the Court finds there remain factual issues as to whether any of the cash transfers at issue came from the accounts, account receivables, and proceeds thereof securing the $500,000 loan.

In their response, Defendants also assert that certain of the transfers at issue were repayments of antecedent debt that was secured by the lien on all of the assets of RCI through the Security Agreement entered in relation to the $760,000 loan. The April 29, 2005 Security Agreement defines "debt" as follows:

> the present and future monetary liabilities and obligations (including but not limited to the obligations to pay Principal and Interest) of Debtor [One Link] and Company [RCI] to Creditor [OurLink], whether absolute or contingent, under the Secured Note, the Company Note, the Pledge Agreement, this Security Agreement, the TCC Pledge Agreement and the TCC Security Agreement.

Security Agreement at ¶ 1(h). Having reviewed the Company Note[4], the Court finds that the Company Note does not provide for any future advances and that the only debt under the Company Note is the $760,000 principal plus interest. The Court, therefore, finds the antecedent debt the

---

[4] The Company Note is the April 29, 2005 Convertible Secured Promissory Note between RCI and OurLink regarding the $760,000 loan. It is the only agreement referenced in the definition of "debt" that is relevant to the RCI transfers.

transfers were allegedly repayments for was not secured by the Security Agreement's lien on all of the assets of RCI.

Additionally, in their response, Defendants contend the statute of limitations bars Boatright's claims as to certain of the transfers at issue. Boatright asserts that Defendants' analysis of the statute of limitations is flawed. While Defendants begin running the statute of limitations on the date of the transfer, Boatright contends the proper date to begin the running of the statute of limitations is the date Boatright obtained its judgment – March 1, 2011.

> A cause of action with respect to a fraudulent transfer or obligation pursuant to the provisions of the Uniform Fraudulent Transfer Act, Section 112 et seq. of this title, is extinguished unless action is brought:
> 1. Pursuant to the provisions of paragraph 1 of subsection A of Section 116 of this title, within four (4) years after the transfer was made or the obligation was incurred or, if later, within one (1) year after the transfer or obligation was or could reasonably have been discovered by the claimant;
> 2. Pursuant to the provisions of paragraph 2 of subsection A of Section 116 of this title or subsection A of Section 117 of this title, within four (4) years after the transfer was made or the obligation was incurred;
> 3. Pursuant to the provisions of subsection B of Section 117 of this title, within one (1) year after the transfer was made or the obligation was incurred; . . . .

Okla. Stat. tit. 24, § 121. Further, a cause of action for fraudulent transfers under the OUFTA does not accrue until recovery of judgment against the debtor. *See Eskridge v. Nalls*, 852 P.2d 818, 820-21 (Okla. Civ. App. 1993) (citing *Ziska v. Ziska*, 95 P. 254 (Okla. 1908)).

Having carefully reviewed the parties' submissions, and based upon the law set forth above, the Court finds Boatright's causes of action for fraudulent transfers under the OUFTA accrued on March 1, 2011, when judgment was entered against RCI and in favor of Boatright in the Oklahoma

Litigation. In the instant action, Boatright is bringing its claims pursuant to the provisions of both Section 116 and Section 117(B). Since claims brought under Section 116 have a four year statute of limitations, Boatright's claims brought under Section 116 are not barred by the statute of limitations, as this action was filed less than four years after judgment was entered in favor of Boatright. However, since claims brought under Section 117(B) have a one year statute of limitations, Boatright's claims brought under Section 117(B) would not be barred by the statute of limitations only if the transfers challenged through those claims occurred on or after November 13, 2011.[5]

Accordingly, for the reasons set forth above, the Court finds that Boatright is not entitled to summary judgment.

IV.   Conclusion

Therefore, the Court DENIES Defendants' Motion for Summary Judgment [Doc. No. 35] and DENIES Boatright's Motion for Summary Judgment [Doc. No. 44].

**IT IS SO ORDERED this 7th day of October, 2014.**

_____
TIMOTHY D. DeGIUSTI
UNITED STATES DISTRICT JUDGE

---

[5] In its submissions, Boatright has not clarified which transfers it is challenging under Section 116 and which transfers it is challenging under Section 117(B). Therefore, the Court is unable based upon the record currently before it to determine if any of Boatright's claims are barred by the statute of limitations.

11